# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

SHANNON FITZGERALD,

        Plaintiff,

        v.

LINCARE INC.,

        Defendant.

CAUSE NO.: 2:18-CV-412-TLS

## OPINION AND ORDER

This matter is before the Court on Defendant Lincare Inc.'s Motion for Summary Judgment [ECF No. 32] and its Motion to Strike Certain Exhibits to Plaintiff's Response Brief [ECF No. 36]. For the reasons set forth below, the Motion for Summary Judgment is granted, and the Motion to Strike Certain Exhibits to Plaintiff's Response Brief is denied.

## FACTUAL AND PROCEDURAL HISTORY

In the early 2010s, Plaintiff Shannon Fitzgerald was diagnosed with lupus. Pl.'s Dep. 55, ECF Nos. 33-11, 34-2. The Plaintiff would occasionally experience flareups of her condition that rendered her unable to work. Def.'s Ex. A-6 at 6, 14, ECF No. 33-8. The Plaintiff began working for Defendant Lincare Inc. as a customer service representative in August 2015. Answer ¶ 7, ECF No. 9. In October 2016 and April 2017, the Plaintiff submitted to the Defendant Certifications of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act) ("FMLA Certifications"). Def.'s Ex. A-6 at 4–7, 12–15.[1] Upon receipt of the FMLA Certifications, the Defendant sent a letter to the Plaintiff confirming that her request for

---

[1] The Plaintiff was required to resubmit the Certification every six months, *see* Def.'s Ex. A-6 at 2, 9; therefore, there are two Certifications. Although submitted at different times, the FMLA Certifications are substantially identical. *See id.* at 4–7, 12–15.

intermittent time off was covered by the FMLA. *Id.* at 2, 9. On August 29, 2017, the Plaintiff was given a Letter of Termination and was fired. Def.'s Ex. D-5, ECF No. 33-17. In the Letter of Termination, the Defendant cited the cause of termination as the Plaintiff's insubordination, her failure to discharge assigned job duties in a satisfactory, professional and/or efficient manner, her substandard workmanship, negligence, or inefficiency during the performance of her duties, and her failure to exhibit self-control to customers and/or fellow employees. *Id.*

After her termination, on October 31, 2018, the Plaintiff filed a Complaint [ECF No. 1] in this Court, alleging one count of discrimination under the Americans with Disabilities Act (ADA). On December 31, 2018, the Defendant filed its Answer [ECF No. 9]. After the conclusion of discovery, the Defendant filed a Motion for Summary Judgement [ECF No. 32]. The Plaintiff filed a Response [ECF No. 34], and the Defendant filed a Reply [ECF No. 35]. In addition to its Reply, the Defendant filed a Motion to Strike [ECF No. 36], asking the Court to strike certain exhibits the Plaintiff submitted with her Response. The Plaintiff did not respond to the Motion to Strike and the time to do so has passed.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (citing *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 613 (7th Cir. 2008)). "Summary judgment is the proverbial 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accepts its version of events." *Beardsall v. CVS Pharmacy,*

*Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Indeed, it is well established that "the non-moving party 'may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence.'" *Id.* at 972 (quoting *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997) (quoting *Wainwright Bank & Tr. Co. v. Railroadmens Fed. Sav. & Loan Ass'n*, 806 F.2d 146, 149 (7th Cir. 1986)). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citing *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992)). Additionally, a court is not "obliged to research and construct legal arguments for

parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (citing *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)).

## ANALYSIS

The Defendant has filed a Motion for Summary Judgment and a Motion to Strike. The Court considers each motion in turn.

### A.    Defendant's Motion to Strike

The Defendant's Motion to Strike [ECF No. 36] argues that Exhibits G [ECF No. 34-7], F [ECF No. 34-6], and H [ECF No. 34-8], which were submitted with the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [ECF No. 34], should be stricken. In general, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, "[m]otions to strike are generally disfavored, 'and usually only granted in circumstances where the contested evidence causes prejudice to the moving party.'" *Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1029 (N.D. Ind. 2020) (quoting *Rodgers v. Gary Cmty. Sch. Corp.*, 167 F. Supp. 3d 940, 948 (N.D. Ind. 2016); *Kuntzman v. Wal-Mart*, 673 F. Supp. 2d 690, 695 (N.D. Ind. 2009)).

#### 1.    *Exhibits G and F*

The Plaintiff represents that Exhibit G is an email she received from her manager, Tamara McClain, on June 8, 2017. The email indicates that "[f]or all call offs, you are required to contact both Trent and I," that "[a]nyone who is leaving early or coming in late for doctor appointments, <u>MUST</u> provide a MD note when they return," and that "[m]orning meetings will begin at 8:15am." Pl.'s Ex. G, ECF No. 34-7. The email also requests that everyone "email me

all of your planned vacation dates (even if it's approved in ADP) by Monday" and that everyone "respond back with your phone number." *Id.*

The Plaintiff represents that Exhibit F is a performance review she received on October 26, 2016. The performance reviewed was issued by Robert Stubblefield, the Plaintiff's former manager. Pl.'s Ex. F, ECF No. 34-6. The Plaintiff received a 1.5 out of 4 for her attendance and an average rating of 2.8 out of 4. *Id.* The attendance section includes a handwritten note that states: "I am aware of everything that's going on with your FMLA + illness. Be mindful of sick days + vacation in future." *Id.*

The Defendant argues that neither exhibit is relevant to this case. Rule 401 of the Federal Rules of Evidence provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable then it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401, and Rule 402 provides that "[i]rrelevant evidence is not admissible," Fed. R. Evid. 402.

The Defendant's argument is confusing. On the one hand, the Defendant argues that the Court cannot consider the exhibits because they are irrelevant. On the other, the Defendant was the first to submit both exhibits, as they were included with the Defendant's Motion for Summary Judgment. *See* Def.'s Ex. D-6, ECF No. 33-18; Def.'s Ex. A-4 at 1, ECF No. 33-6. Regardless, because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate and because motions to strike are generally disfavored, the Court denies the Defendant's Motion to Strike [ECF No. 36] as it relates to Exhibits G and F. The Court has noted the Defendant's objections

and will consider the objections to the extent they arise in the Court's summary judgment analysis.

### 2.     *Exhibit H*

The Plaintiff represents that Exhibit H is a text message conversation between her and Trent McBride, the Defendant's area manager. The exhibit is a screenshot of several text messages. Pl.'s Ex. H, ECF No. 34-8. The screenshot indicates that one of the messages is from "Trent"; however, the screenshot does not include the sender's last name, phone number, or anything to confirm it was Mr. McBride sending the message. *Id.* Based on the screenshot it cannot be determined if the Plaintiff was the recipient of the message or the date the message was sent. *See id.*

The Defendant argues that Exhibit H should be stricken because it is unauthenticated and irrelevant. The Court agrees that nothing submitted by the Plaintiff serves to authenticate the document or confirm that it is, as the Plaintiff claims, a text message from Mr. McBride stating that the Plaintiff needs to catch up on customer orders. *See Millard Grp. Inc. v. Stutesman*, No. 17-CV-8520, 2019 WL 3003148, at *2 (N.D. Ill. July 10, 2019) ("Millard offers a screenshot of a text message allegedly between Stutesman and Uchacz, but that screenshot is obviously inadmissible because it is unsworn and unauthenticated. And other than a reference to 'Barb,' the screenshot even lacks Stutesman and Uchacz's names."). The Plaintiff argues that Exhibit H supports her argument that she was terminated due to her disability. As explained in a later section of this Opinion and Order, it is unclear to the Court how this document supports her case.

 Although the Defendant has articulated several issues with Exhibit H, the Defendant does not argue that the exhibit "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). As previously explained, motions to strike are generally

disfavored, and the Court's consideration of Exhibit H will not alter its disposition on the

Defendant's Motion for Summary Judgment. Accordingly, the Court denies the Defendant's

Motion to Strike [ECF No. 33] as it relates to Exhibit H. The Court has noted the Defendant's

objections and will consider the objections to the extent they arise in the Court's summary

judgment analysis.

**B.      The Defendant's Motion for Summary Judgment**

The Defendant argues that it is entitled to summary judgment on all the Plaintiff's claims.

The Plaintiff's Complaint contains only one Count and alleges:

> On August 29, 2017, due to [the Plaintiff's] actual or perceived disability, [the
> Defendant] terminated her employment. 42 U.S.C. § 12112(a). Specifically, [the
> Defendant's] discriminatory actions included, but were not limited to (1) limited,
> segregating, or classifying [the Plaintiff] in a way that adversely affected her
> opportunities or status because of her actual or perceived disability within the
> meaning of § 12112(b)(1); (2) utilizing standards, criteria, or methods of
> administration that have the effect of discrimination on the basis of disability
> within the meaning of § 12112(b)(3)(A); (3) not making reasonable
> accommodations for the known physical limitations of [the Plaintiff], an
> otherwise qualified individual with a disability who was an employee, despite the
> fact that doing so would not impose an undue hardship on the operation of [the
> Defendant's] business within the meaning of § 12112(b)(5)(A); and (4) denying
> employment opportunities to [the Plaintiff] based on [the Defendant's] need to
> make reasonable accommodations for her physical impairments within the
> meaning of § 12112(b)(5)(A).

Compl. ¶ 19, ECF No. 1. Based on the contents of the Complaint and the Plaintiff's Response,

the Plaintiff has alleged claims of disparate treatment and failure to accommodate. Under the

ADA, a plaintiff can bring a disparate treatment claim, where the plaintiff alleges the employer

treated her differently because of her disability, as well as a failure to accommodate claim, where

the plaintiff alleges that her employer failed to reasonably accommodate her disability. *Curtis v.

Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015) (citing *Sieberns v. Wal-Mart Stores,

Inc.*, 125 F.3d 1019, 1021–22 (7th Cir. 1997); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d

1281, 1283 (7th Cir. 1996)). The Plaintiff's case does not focus on her inability to work while experiencing lupus flareups. Rather she contends that working overtime results in more frequent lupus flareups, and that she experienced discrimination on the basis of her inability to work overtime. The Plaintiff argues that the Defendant is liable because it did not provide her with the accommodation of a strict forty-hour workweek with no overtime and because the Defendant terminated her due to her inability to work overtime, which was caused by her lupus. The Court considers each claim in turn.

### 1.    *Disparate Treatment*

The Seventh Circuit has explained that:

> Section 12112(a) of the ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Subsection (b) outlines various ways in which an employer might discriminate against an employee, including by "limiting, segregating, or classifying . . . [an] employee in a way that adversely affects the opportunities or status of such . . . employee because of the disability of such . . . employee," and by "utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability." *Id.* §§ 12112(b)(1), (3)(A).

*Kurtzhals v. County of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020). "To prove a violation of section 12112(a), a plaintiff must show that: 1) [she] is disabled; 2) [she] is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; 3) [she] suffered an adverse employment action; and 4) the adverse employment action was caused by [her] disability." *Id.* (citing *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016)). The language of the ADA requires proof of "but for" causation. *See McCann v. Badger Mining Corp.*, 965 F.3d 578, 588–89, 588 n.46 (7th Cir. 2020).[2] To defeat summary judgment, the

---

[2] The Court notes that many circuits have held that the ADA Amendments Act of 2008 did not alter the ADA's requirement of proof of "but for" causation. *McCann*, 965 F.3d at 588 n.46 (citing cases).

Plaintiff must adduce evidence that would permit a reasonable jury to find that the Defendant took the adverse action against her on the basis of her disability. *See Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). "[T]he ultimate question in a discriminatory employment termination case is '[w]hether a reasonable juror could conclude that [the plaintiff] would have kept [her] job if [she was not disabled], and everything else had remained the same.'" *McCann*, 965 F.3d at 589 (quoting *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019)). Additionally, in instances where a defendant provides evidence demonstrating the existence of nondiscriminatory reasons for the adverse employment action, the plaintiff must also present evidence showing that the proffered reasons were a pretext for discrimination. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (citing *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 485 (7th Cir. 2002)); *see also McCann*, 930 F.3d at 589 (explaining that one way for a plaintiff to demonstrate but-for causation is to "show[] that the stated reasons for the firing were pretextual" (quoting *Graham*, 930 F.3d at 929)).

The Plaintiff claims that the Defendant discriminated against her because of her lupus in violation of the ADA. On the instant motion for summary judgment, the Defendant does not dispute that the Plaintiff is disabled; thus, the Court assumes that the Plaintiff is disabled for the purposes of this motion.[3] Rather, the Defendant's argument is straightforward: it contends that

---

However, "the question is still technically an 'open' one in our circuit." *Id.* (citing *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017)). In this case, the parties have not argued that another causation standard should apply; therefore, the Court will apply the "but for" causation standard. *See id.*

[3] The Defendant argues that the Plaintiff has attempted to blur the line between the ADA and the FMLA, explaining that the FMLA allows eligible employees the right to take leave because of a serious health condition while the ADA prohibits discrimination against a qualified individual on the basis of disability. Def.'s Mot. 21, ECF No. 32. Nevertheless, the Defendant does not argue on the instant motion that the Plaintiff is not disabled. The Court, however, notes the similarities between this case and *Moore v. J.B. Hunt Transport, Inc.*, where the Seventh Circuit explained that "an intermittent impairment that is a characteristic manifestation of an admitted disability is . . . a part of the underlying disability and hence a condition that the employer must reasonably accommodate," 221 F.3d 944, 952 (7th Cir. 2000) (quoting *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995)), but clarified that a plaintiff cannot merely "use his intermittent flare-ups to establish that his impairment is a disability," *id.* The court

9

the Plaintiff cannot succeed on her claim because she was terminated due to her performance and not her disability. This argument assumes that the employment action at issue is the Plaintiff's termination; however, the Plaintiff does not clearly identify the employment actions on which her claim is based. Indeed, the Plaintiff's Response does not cite any case law, does not identify the elements necessary to establish an ADA claim, and does not explain with particularity what evidence could satisfy each element of her claim.[4]

For the sake of completeness, the Court will consider each of the events and conduct cited in the Plaintiff's Complaint and Response and determine whether they qualify as adverse employment actions. If any qualify as an adverse employment action, the Court will then consider whether the Plaintiff has presented evidence showing that her disability was the but for cause of the adverse employment action, whether the Defendant has presented evidence demonstrating a nondiscriminatory reason for the adverse employment action, and, finally, whether the Plaintiff has presented evidence to show that the Defendant's proffered reason was a pretext for discrimination.

    i.    *Adverse Employment Action*

The Seventh Circuit has explained that "[a]n adverse employment action must be 'materially' adverse to be actionable, meaning 'more than a mere inconvenience or an alteration of job responsibilities.'" *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001)

---

in *Moore* held that the plaintiff's "flare-ups, one or two per year," did not "render his condition a disability." *Id.*

[4] The Plaintiff's Response also does not comply with Local Rule 56-1. The Court, however, has discretion as to how to apply its own local rules. *Goltz v. Univ. of Notre Dame du Lac*, 177 F.R.D. 638, 640–41 (N.D. Ind. 1997) ("Moreover, it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995); *Waldridge*, 24 F.3d at 921–22). In this instance, the Court declines to strictly enforce the local rule because, when considering the filings in their current format, the Motion for Summary Judgment can be easily resolved.

(internal quotation marks omitted) (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001)).

> Generally, an adverse employment action "fall[s] into [one of] three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge."

*Tarpley v. City Colls. of Chi.*, 752 F. App'x 336, 346–47 (7th Cir. 2018) (quoting *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011)). However, "not everything that makes an employee unhappy is an actionable adverse action." *Kersting*, 250 F.3d at 1115 (quoting *Oest*, 240 F.3d at 613).

As previously discussed, the Plaintiff has not explained how—or identified which of— the events and conduct described in her filings constitute adverse employment actions. The Plaintiff's Complaint references: (1) a June 8, 2017 email from the Plaintiff's manager explaining that a doctor's note is required to take sick days; (2) alleged threats of disciplinary action when the Plaintiff objected to overtime work assignments; (3) a July 31, 2017 change in work assignment that resulted in an increase in the Plaintiff's workload relative to the two other customer service representatives; and (4) the Plaintiff's August 29, 2017 termination. The Plaintiff's Response references: (1) the Plaintiff's general fear of losing her job after submitting her FMLA Certifications; (2) the Plaintiff's receipt of poor marks on her performance review; (3) the Plaintiff's receipt of additional work tasks; and (4) the Plaintiff's termination. Despite referencing the above-described events and conduct, the Plaintiff does not indicate which of these events she claims to be an adverse employment action and which are being used to demonstrate the discriminatory animus of the Defendant.

First, the Plaintiff's termination is obviously an adverse employment action. *See Tarpley*, 752 F. App'x at 346. Second, although an alteration of job responsibilities generally does not constitute an adverse employment action, *see Kersting*, 250 F.3d at 1115, an increase to the Plaintiff's workload could effectively be considered a decrease in pay, and, thus, would constitute an adverse employment action, *see Tarpley*, 752 F. App'x at 346–47. For the purpose of this analysis, the Court will assume, but does not hold, that the increase to the Plaintiff's workload constitutes an adverse employment action.

Next, the alleged warnings and threats of disciplinary action as well as the Plaintiff's performance review do not, in this case, independently constitute adverse employment actions. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (noting in the context of a claim for retaliation "unfair reprimands or negative performance evaluations, unaccompanied by some *tangible* job consequence, do not constitute adverse employment actions." (quoting *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001))); *Ajayi v. Aramark Bus. Servs.*, Inc., 336 F.3d 520, 531 (7th Cir. 2003) (finding no adverse employment action on a disparate impact claim where the employee was informed of impending demotion but was never actually demoted).[5] The Plaintiff's general fear of termination is also not an adverse employment action in this case, as the Plaintiff has not made a claim of constructive discharge. *See Abudayyeh v. Envoy Air, Inc.*, No. 19-C-5802, 2020 WL 5819868, at *6 (N.D. Ill. Sept. 30, 2020). Finally, the Plaintiff does not explain how receiving the June 8, 2017 email from her manager requiring a doctor's note to

---

[5] It is conceivable that warnings or threats could serve as the basis for a hostile work environment claim. *Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) ("We agree with our colleagues in other circuits that a plaintiff may assert a claim for an illegal hostile work environment on the basis of disability under 42 U.S.C. § 12112(a)."). However, the Plaintiff's Complaint does not allege a hostile work environment claim.

12

take a sick day constitutes an adverse employment action.[6] The Court, having reviewed the email and considering it in the light most favorable to the Plaintiff, finds that no reasonable jury would conclude that the email constitutes such an action because it is, at worst, a mere inconvenience and is not materially adverse.[7] Although these events and conduct do not constitute adverse employment actions in this case, the Court will consider each of these events and conduct in conjunction with the adverse employment actions of the Plaintiff's termination and the increase to her workload to determine whether either was motivated by discrimination.

      *ii.*    *Causation and Pretext*

      a.    The Plaintiff's Termination

The Plaintiff's termination constitutes an adverse employment action. However, the Plaintiff has not presented evidence that, when construed in her favor, would allow a reasonable jury to conclude that her disability was the but for cause of her termination. In addition, the Defendant has articulated a nondiscriminatory reason for her termination. The Court will first assess the Defendant's nondiscriminatory reason for the Plaintiff's termination. The Court will then explain why the evidence provided by the Plaintiff does not create a genuine dispute of material fact as to whether her disability was the but for cause of her termination or whether the Defendant's proffered reason for her termination is a pretext for discrimination.

---

[6] Perhaps the receipt of such an email would be actionable in an FMLA claim. However, despite the Plaintiff's references to the FMLA, the Plaintiff's Complaint does not include an FMLA claim.

[7] The Declaration of Tamara McClain explains that the email was sent to everyone on her team because she "was having a problem with [her] team members where they were not coming into work and then later saying they were at a doctor's appointment." Def.'s Ex. D (Decl. of Tamara McClain) ¶ 24, ECF No. 33-12. The email was sent to eighteen total recipients. *See* Def.'s Ex D-6. Although the Plaintiff claims that this email was discriminatory because she qualified for FMLA leave, Pl.'s Dep. 155–56, the Plaintiff has provided nothing to demonstrate that her disability was the but-for cause of the email being sent or that the Defendant's proffered reason for sending the email is a pretext for discrimination. Accordingly, even if the email were an adverse employment action, the Plaintiff's claim would still fail regarding the email.

The Defendant submitted the Declaration of Tamara McClain as well as a number of documents related to the various disciplinary measures it took against the Plaintiff to demonstrate that the Plaintiff's disability was not the but for cause of her termination and to provide a nondiscriminatory reason for her termination.

First, the Defendant submitted a June 28, 2017 Documented Verbal Warning that was presented to the Plaintiff during her term of employment. Def.'s Ex. D-2, ECF No. 33-14. In this warning, the Defendant, through its center manager Ms. McClain, indicates that the Plaintiff was "verbally counseled on multiple occasions regarding [her] behavior, the loud tone of voice, the abrasive unprofessional demeanor, and frequent verbal interruptions." *Id.* at 1. The warning also indicates that the Plaintiff behaved in a disruptive manner by sending her coworker an inappropriate email on June 14 and by attempting to manage her coworker's work by "giving directives without management approval on June 21." *Id.* Finally, the warning indicates that "[t]his Documented Verbal Warning is being issued to you to formally advise you that if you do not demonstrate immediate and sustained improvement in your behavior, your employment will be terminated." *Id.* at 2. During her deposition, the Plaintiff confirmed that she received the Documented Verbal Warning but testified that she refused to sign the document because she did not agree with its characterization of her behavior. Pl.'s Dep. 105–07.

Second, the Defendant submitted an August 18, 2017 email that Ms. McClain sent to the Defendant's Human Resources Department and her supervisor Mr. McBride. Def.'s Ex. D-3, ECF No. 33-15. The email indicates that, despite the Documented Verbal Warning, the Plaintiff's behavior had not changed and that, after she was assigned additional patient files, the Plaintiff had an outburst at work. *Id.* Specifically, the email details that the Plaintiff was slamming things on her desk, was arguing with her coworker, and left her files scattered on a

14

coworker's chair. *Id.* The email further details that Ms. McClain called the Plaintiff to inquire

about the location of the new files while the Plaintiff was off work. *Id.* In response, the Plaintiff

told her that she didn't remember where she put them and that she would figure it out on

Monday. *Id.* In the email, Ms. McClain then expresses that the Plaintiff's behavior was

unacceptable and that the Plaintiff was not taking her job seriously. *Id.* Finally, Ms. McClain

asks to move forward with terminating the Plaintiff's employment. *Id.* Ms. McClain resent the

email on August 28, 2017, because she did not get a response from her manager. Def.'s Ex. D-4,

ECF No. 33-16.

Finally, the Defendant provided an August 29, 2017 Termination Letter, which was given

to the Plaintiff when she was fired. Def.'s Ex. D-5, ECF No. 33-17. The Termination Letter

indicates:

> You received a Documented Verbal Warning on June 28, 2017 because you were
> not performing the duties and responsibilities of the position of Customer Service
> Representative to meet the company's standard. Since that time, your
> performance has not made significant progress towards achieving those standards
> set forth in the Documented Verbal Warning. In addition, I reassigned your work
> responsibilities on July 31, 2017. Your new responsibility was to cover patients'
> last names from **L to Z**, effective on August 17. Instead of complying, you argued
> with the Senior CSR, slammed things on your desk, lost track of the patient
> referrals and stated: "I don't know where I put it. Just take messages and I'll
> figure it out on Monday." You clocked out at 6:28 pm on Friday August 18th, and
> failed to manage your CSR responsibilities.
>
> This is a violation of the Documented Verbal Warning and the following Lincare
> Major Infraction:
>
> - *# 1 – Insubordination, e.g., willful disobedience of instructions properly
>   issued by your supervisor.*
> - *#9 – Failure to discharge assigned job duties in a satisfactory
>   professional and/or efficient manner.*
> - *# 15 – Substandard workmanship, negligence, or inefficiency during the
>   performance of one's duties.*
> - *# 16 – Failing to exhibit self-control to customers and/or fellow
>   employees.*

15

Consequently, your employment is being terminated effective immediately.

*Id.* During her deposition, the Plaintiff confirmed that she received the Termination Letter. Pl.'s Dep. 123–24.

With the submission of these documents, the Defendant has offered evidence of a legitimate, nondiscriminatory reason for terminating the Plaintiff's employment. Accordingly, the Plaintiff must "show through inconsistences or contradiction by [the Defendant] that the reason for termination was not the reason proffered, but instead discriminatory." *Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 491 (7th Cir. 2020) (citing *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007)). "Under a pretext analysis, the focus is whether the employer honestly believed the reason it has given for termination." *Id.* at 490–91 (citing *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 506 (7th Cir. 2014)).

The Plaintiff has failed to provide evidence that, when construed in her favor, creates a dispute of material fact as to whether the cited reasons for her termination were a pretext for discrimination. During her deposition, the Plaintiff testified that she disagreed with how the Documented Verbal Warning and the Termination Letter characterized her behavior. However, the Plaintiff's opinions do nothing to show that the Defendant did not honestly believe its reasons for termination or that they were a pretext for discrimination. *See Holley v. Pritchett*, No. IP-01-0889, 2004 WL 2757871, at *17 (S.D. Ind. Sept. 30, 2004) (explaining that, in the context of an ADA retaliation claim, the plaintiff's "own disagreement with her employer's assessment of her performance is insufficient to create a triable issue of pretext.") (citing *Pitasi v. Garnter Group, Inc.*, 184 F.3d 709, 718 (7th Cir. 1999); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460–61 (7th Cir. 1994)). In her Response, the Plaintiff argues that a genuine dispute exists as to the reason for her termination because she had only one prior documented disciplinary action,

16

because there was ongoing tension regarding her inability to work overtime, because her performance review from October 2016 indicates that she was rated lowest on the topic of "attendance," and because, when she contacted the Defendant's area manager, Mr. McBride, her concerns about working overtime were rebuffed.

The fact that the Plaintiff received only one prior documented disciplinary action does not suggest the Defendant's cited reason for termination was pretextual. The Documented Verbal Warning specifically warned that if the Plaintiff did "not demonstrate immediate and sustained improvement in [her] behavior, [her] employment will be terminated." Def.'s Ex. D-2 at 2. The Termination Letter indicates that the Plaintiff failed to remedy her behavior as contemplated by the Documented Verbal Warning, thus warranting the termination of her employment. Def.'s Ex. D-5. The Court recognizes that the Defendant's policies have a "normal sequence for corrective action" that involves issuing counseling, a verbal warning, and a written warning prior to discharge. Pl.'s Ex. E 26–27, ECF No. 34-5. However, this is irrelevant because the same policy indicates that "[t]he normal progressive sequence may start with a more severe step, up to and including discharge, depending on the seriousness of the incident." *Id.* at 27.[8] Accordingly, the Plaintiff's disciplinary records do nothing to show that her disability was the but for cause of her termination or that the Defendant's cited reason for her termination was a pretext for discrimination.

The October 2016 performance review also does nothing to demonstrate that the that Plaintiff's disability was the but for cause of her termination or that the Defendant's cited reason

---

[8] The Plaintiff was issued a Documented Verbal Warning before being terminated, and the Documented Verbal Warning references that the Plaintiff had "been verbally counseled on multiple occasions regarding [her] behavior, the loud tone of voice, the abrasive unprofessional demeanor, and frequent verbal interruptions." Def.'s Ex. D-2. Accordingly, it would seem that the Defendant went through most of the normal sequence for corrective action.

for her termination was pretextual. The performance review was conducted on October 26, 2016,

Def.'s Ex. A-4 at 1, ECF No. 33-6, eight months before the Plaintiff sent the emails resulting in

her Documented Verbal Warning and ten months before the Plaintiff's outburst that resulted in

her termination. The performance review required evaluation of the Plaintiff on four criteria: (1)

Quantity – Completion of position duties; (2) Quality – Accuracy, timeliness, thoroughness, (3)

Work Habits – Safety, need of supervision, adaptability, and ability to get along with others; and

(4) Attendance – Absences, tardiness. *Id.* at 1. For Attendance, which accounted for only five

percent of the entire evaluation, the Plaintiff received a 1.5/4.0, which was rated as "competent."

*Id.* The attendance section includes a handwritten note, presumably from the evaluator, that

provides, "I am aware of everything that's going on with your FMLA + illness. Be mindful of

sick days + vacation in future." *Id.*

The Plaintiff claims that her performance review is proof of the Defendant's

discrimination because the lowest score she received was for attendance and the review

contained a comment regarding her sick and vacation days. However, the Plaintiff offers nothing

to suggest that the October 2016 performance review was considered as part of the decision to

terminate her employment. Moreover, the Plaintiff merely points out that attendance was her

lowest score without explaining why the score is indicative of discrimination. Although the score

is lower, it was still within the "competent" rating. The Defendant's definition of competent is:

> Does a full, complete, and satisfactory job. Performance is what is expected of a
> person in the assigned position. Errors are few and seldom repeated. Significant
> improvement in performance is not required to perform the full job. Requires only
> normal supervision and follow-up. You feel comfortable assigning employee any
> task within the full scope of the job.

*Id.* at 3. This suggests that the Defendant believed the Plaintiff's attendance was acceptable and

not that it was an issue warranting termination.

The Plaintiff also does not articulate why the direction to the Plaintiff to be mindful of her sick and vacation days is evidence of discrimination. The comment does not indicate that the Plaintiff must be mindful of her approved leave and does not suggest that the Defendant took issue with the Plaintiff taking time off due to her lupus flareups. Moreover, "[t]he ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance . . . is a basic requirement of most jobs." *Stelter*, 950 F.3d at 491 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999)). Accordingly, the Defendant could advise the Plaintiff against taking excessive vacation or unexplained sick days, especially if they were unrelated to her underlying condition, without violating the ADA.

Overall, the Plaintiff does nothing to connect the performance review to the instant case or explain how it creates a genuine issue of material fact as to whether her disability was the but for cause of her termination or whether the Defendant's reasons for terminating her were a pretext for discrimination. The Plaintiff merely points to one lower score and claims it amounts to discrimination; however, she ignores that she received at least a "competent" on each object to be measured, that she received an overall rating of 2.8, which amounted to a "commendable" rating, and that the evaluator, while being aware of her illness, opined that the Plaintiff met or exceeded her work objectives. Def.'s Ex. A-4 at 1. She also ignores that she was only terminated after receiving warnings and repeatedly engaging in inappropriate behavior, and nothing in the performance review suggests otherwise. *See Monroe*, 871 F.3d at 506 ("Certainly earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken." (quoting *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 901 (7th Cir. 2005))).

19

The Plaintiff also argues that, because her concerns about overtime work were rebuffed during a conversation with the Defendant's area manager, Mr. McBride, the Defendant engaged in discrimination. The Plaintiff does not specify a particular conversation; however, it seems that she is referring to the text message conversation that was submitted as her Exhibit H. The only message the Plaintiff received from Mr. McBride is: "We need it all caught up so if it's any reason to why we can't then I don't want to hear it. Seriously we are in a serious situation and need to work as a team and get everything caught up and all cmns out." Pl.'s Ex. H, ECF No. 34-8. This message was sent in response to the Plaintiff's message saying: "Trent you and I need to talk about the weekend and getting everything caught up. We can tomorrow." *Id.*

The Plaintiff, in her deposition, testified that this text message demonstrates that she was required to work on the weekend and that her manager was making her work despite her condition. Pl.'s Dep. 43–44. However, neither the Plaintiff nor Mr. McBride references the Plaintiff's lupus, and the Plaintiff does not indicate that she would be unable to complete her work due to her condition. It is unclear to the Court how these text messages are evidence of discrimination. These text messages are evidence of, at best, a disagreement between the Plaintiff and one of the Defendant's managers, which is insufficient to create an issue of material fact regarding whether the Plaintiff's disability was the but for cause of her termination or whether the Defendant's nondiscriminatory reason for terminating the Plaintiff was a pretext for discrimination. To the extent the Plaintiff is referencing a different conversation or interaction with Mr. McBride or any of the Defendant's other managers, she has not specified which conversation or interaction and has failed to provide any evidence showing that such a conversation or interaction occurred.

During her deposition, the Plaintiff testified multiple times that her managers threated to reprimand her for her disability and discriminated against her on various occasions. *See, e.g.*, Pl.'s Dep. 40–42. She claims that this occurred in person and through emails and text messages. *Id.* However, the alleged emails and text messages are not before the Court, and the Plaintiff testified that she cannot provide them because she no longer has access to them. *See id.* When asked about the interactions she had with the Defendant's managers, the Plaintiff repeatedly indicated that she could not recall details about the conversations, such as when they occurred. *See, e.g.*, *id.* at 38, 47, 64, 69, 73–74, 76, 122, 142–45, 150–52, 185. As previously explained, evidence is necessary at this stage in the proceedings, and vague references to conversations without specific details are insufficient to withstand a motion for summary judgment. *See Brown v. Chi. Transit Auth. Ret. Plan*, 197 F. App'x 475, 482 (7th Cir. 2006) ("A proper foundation for a conversation must include information as to when and where the conversation occurred, who was present, and who said what to whom." (citing *Houk v. Village of Oak Lawn*, No. 86 C 139, 1987 WL 7498, at *2 (N.D. Ill. Feb. 26, 1987))); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1044 (N.D. Ill. 2018) ("A witness's inability to recall a fact cannot be used to create a genuine dispute about it; no recollection yields no competent evidence." (citing *Brown*, 197 F. App'x at 481)). Therefore, these bare allegations of discriminatory conduct are insufficient to survive summary judgment.

Finally, the Plaintiff argues that the "ongoing tensions" regarding her inability to work overtime show that she was discriminated against. It is unclear what the Plaintiff means by "tensions." The Plaintiff does not allege that she was harassed or that offensive or inappropriate comments were directed toward her during her term of employment. *See* Pl.'s Dep. 69. It would seem that she is referencing her own perception of her managers' feelings based on the above

21

described emails, text messages, and in-person conversations. However, the Plaintiff's feelings of tension without evidence of those interactions or without any evidence showing that she was discriminated against are not sufficient for a jury to conclude that the but for cause of the Plaintiff's termination was her disability or that the Defendant's proffered reason for her termination was a pretext for discrimination. *Hizer v. S. Bend Tribune*, 31 F. Supp. 3d 986, 1002 (N.D. Ind. 2014) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006))).

        b.      Reallocation of the Plaintiff's Work

The Plaintiff's Complaint and Response both allege that the Plaintiff received an increased workload. To support this allegation, the Plaintiff cites her deposition testimony that she was "assigned additional letters" of the alphabet (referring to the assignment of clients to representatives by the first letter of the client's last name), which resulted in an increase in the total number of client files for which she was responsible. *See, e.g.*, Pl.'s Dep. 125; Def.'s Ex. D (Decl. of Tamara McClain) ¶ 12, ECF No. 33-12.[9] Although the Plaintiff submitted evidence that shows she experienced an increase to her workload, she did not submit any evidence to show that her disability was the but for cause of the increased workload.

In contrast, the Defendant submitted the Declaration of Tamara McClain to demonstrate that the Plaintiff's disability was not the but for cause of her increased workload and to provide a nondiscriminatory reason for the workload adjustment. The declaration explains that, during the

---

[9] The Defendant has submitted evidence suggesting that, although the Plaintiff was assigned additional customer files, Ms. McClain assumed some of the Plaintiff's other work responsibilities. Def.'s Ex. D (Decl. of Tamara McClain) at ¶ 12. However, the Court, at this time, will not weigh the evidence and will assume that the Plaintiff's workload did increase.

summer of 2017, a backlog of files had accumulated because a new customer service representative was falling behind. Def.'s Ex. D (Decl. of Tamara McClain) ¶ 11. In order to address the backlog and create time to train the new customer service representative, Ms. McClain assigned additional files to her two most senior customer service representatives, one of whom was the Plaintiff. *Id.* During her deposition, the Plaintiff agreed that one of the customer service representatives was "newer" but indicated that she was unaware of whether the newer customer service representative needed additional training. Pl.'s Dep. 128–29. She also testified that she was the only person who was assigned additional clients, but did not explain how she knew that no one else was assigned additional work. *Id.* The Plaintiff has not presented any evidence suggesting that the but for reason for the increase to her workload was her disability or that the Defendant's proffered reason is a pretext for discrimination. Accordingly, the Plaintiff's claim fails regarding the increase to her workload.

For the reasons stated above, the evidence before the Court, even when construed in the Plaintiff's favor, does not create a genuine issue of material fact as to whether her disability was the but for cause of an adverse employment action taken against her. In addition, the Defendant has demonstrated a legitimate, nondiscriminatory reason for any adverse employment actions taken against the Plaintiff, and the evidence before the Court, even when construed in the Plaintiff's favor, does not create a genuine issue of material fact as to whether these reasons were a pretext for discrimination. Accordingly, the Court grants the Defendant's Motion for Summary Judgment as to the Plaintiff's disparate treatment claim.

### 2. *Failure to Provide a Reasonable Accommodation*

"A reasonable accommodation claim derives directly from the ADA statute; a plaintiff attempting to prove such a claim must make out a *prima facie* case by establishing the statutory

23

elements." *Curtis*, 807 F.3d at 224 (citing *Bultemeyer*, 100 F.3d at 1283). To succeed on her

failure to accommodate claim, the Plaintiff must show that "(1) [she] is a qualified individual

with a disability; (2) the employer was aware of [her] disability; and (3) the employer failed to

reasonably accommodate the disability.'" *Id.* (quoting *James v. Hyatt Regency Chi.*, 707 F.3d

775, 782 (7th Cir. 2013)). "Relevant to—and sometimes determinative of—the third element is

the employer and employee's respective cooperation 'in an interactive process to determine a

reasonable accommodation.'" *Williams v. Bd. of Educ.*, 982 F.3d 495, 503 (7th Cir. 2020)

(quoting *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019)).

     The ADA provides "that an employer engages in unlawful disability discrimination when

it fails to provide reasonable accommodations for 'the known physical or mental limitations of

an otherwise qualified individual.'" *Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir.

2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). "The term 'reasonable accommodation,' means

'[m]odifications or adjustments to the work environment, or to the manner or circumstances

under which the position held or desired is customarily performed, that enable [a qualified]

individual with a disability . . . to perform the essential functions of that position[.]'" *Hizer*, 31 F.

Supp. 3d at 993 (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). However, "an employer need not

accommodate a disability that is irrelevant to an employee's ability to perform the essential

functions of her job—not because such an accommodation might be unreasonable, but because

the employee is fully qualified for the job without accommodation and therefore is not entitled to

an accommodation in the first place." *Brumfield*, 735 F.3d at 632–33 (citing *Hedberg v. Ind. Bell

Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995); *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538,

542 (7th Cir. 1995)).

The Seventh Circuit has held that "[t]he language of the ADA itself demonstrates that a reasonable accommodation is connected to what the *employer knows* about the *specific limitations* affecting an employee who is a qualified individual with a disability." *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 494 (7th Cir. 2014) (quoting *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005)). "[A] plaintiff typically must *request* an accommodation for [her] disability in order to claim that [she] was improperly *denied* an accommodation under the ADA." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) (citing *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012)). Accordingly, "the ADA does not require an employer to assume that an employee with a disability suffers from a limitation. In fact, better public policy dictates the opposite presumption: that disabled employees are not limited in their abilities to adequately perform their jobs." *Taylor-Novotny*, 772 F.3d at 494 (quoting *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 898 (7th Cir. 2000)); *see also Preddie*, 799 F.3d at 813 ("Although it is fair to assume that the [Defendant] was aware of [the Plaintiff's] diabetic condition, there is no evidence to suggest that [the Plaintiff] ever requested an accommodation for this condition, other than intermittently requesting days off throughout the school year.").

In the motion for summary judgment, the Defendant argues that the Plaintiff did not need an accommodation because she was always able to work overtime and that, even if an accommodation was necessary, the Plaintiff never sought an accommodation. The Plaintiff argues that she requested an accommodation of a strict forty-hour workweek when she submitted the FMLA Certifications and through conversations with her managers and that the Defendant never provided that accommodation. She insists that a forty-hour workweek was necessary because working additional hours increased her stress level, which then caused her to have lupus

flareups.[10] There is no evidence before the Court that, when construed in the Plaintiff's favor, creates a genuine dispute as to whether she needed an accommodation or whether she requested an accommodation from her employer; therefore, summary judgment is appropriate.

      *i.*     *The FMLA Certifications*

The Court begins by considering the evidence related to the FMLA Certifications, which the Plaintiff repeatedly claims prove that she needs an accommodation and serve as a request for an accommodation under the ADA.

The Plaintiff testified during her deposition that she sought leave under the FMLA because her manager recommended that she do so after she missed work due to being hospitalized. Pl.'s Dep. 22. The Plaintiff then received the FMLA Certifications from her doctor and submitted them to the Defendant's Benefits and Payroll department. *Id.* at 23. Nothing before the Court demonstrates that the Plaintiff also wanted or was seeking an accommodation under the ADA.

The FMLA Certifications indicate that the Plaintiff is unable to perform the following job functions: "no lifting, standing [for] prolonged periods, pushing/pulling, gripping, grasping, squatting, kneeling, bending, going up stairs or down stairs." Ex. A-6 at 5; *see also id.* at 13. The FMLA Certifications also include a section that asks, "Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition?" and request the physician to "[e]stimate the part-time or reduced work schedule the employee needs, if any." *Id.* at 6; *see also id.* at 14. The physician filled out this section as "8 hour(s) per day; 5 days per week from Monday through Friday." *Id.* at 6; *see also*

---

[10] Other circuits have held that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). The Court need not address this issue because the Plaintiff does not argue that she sought an accommodation of leave, rather that she sought an accommodation of a strict forty-hour workweek.

*id.* at 14. This section includes the question, "are the . . . reduced hours of work medically necessary?" and the Plaintiff's physician checked "yes." *Id.* at 6; *see also id.* at 14. The Court notes that the parties agree that the Plaintiff's regular work schedule was consistent with the recommended work schedule. *See* Ex. B (Decl. of Bonnie Obst) ¶ 10, ECF No. 33-9 ("Both requests noted a Monday through Friday 8:00 a.m. to 5:00 p.m. work schedule, which was already [the Plaintiff's] work schedule."); Pl.'s Dep. 67 ("Q. The first page lists your regular work schedule Monday through Friday 8:00 to 5:00. A. Correct. Q. . . . If you could show me where it restricts your work to no overtime. A. It does not specifically—no. Right here the doctor has put an estimate of time, eight hours five days a week from Monday through Friday. Q. And we just saw that, that was your regular work schedule, 8:00 to 5:00 Monday through Friday? A. Correct.").[11]

### ii.    Requiring an Accommodation

The Defendant contends that summary judgment must be granted because the Plaintiff was always able to perform the essential functions of her position. Specifically, the Defendant contends that the Plaintiff could and did work overtime and that her condition only prevented her from working overtime when she was experiencing a lupus flareup. The Plaintiff argues that she needed an accommodation of a forty-hour workweek with no overtime work due to her disability. She argues that this need is demonstrated by her FMLA Certifications, which indicate that she needed to work "8 hours per day; 5 days per week," and by her deposition testimony that working more than forty hours per week caused her to have lupus flareups.

---

[11] It is undisputed that the Plaintiff's regular work schedule was Monday to Friday from 8:00 A.M. to 5:00 P.M. *See, e.g.*, Ex. A-6 at 4. Seemingly, this would constitute a 45-hour regular work schedule and would exceed the recommended 40-hour work schedule. However, the Court notes that the Defendant's Employee Handbook references a forty-hour workweek and meal periods/breaks that may not have counted as worktime. Pl.'s Ex. E 10, ECF No. 34-5.

"[T]he failure to accommodate a disabled employee's particular limitation amounts to discrimination 'on the basis of disability' only if the limitation is caused by the disability." *Youngman v. Peoria County*, 947 F.3d 1037, 1042 (7th Cir. 2020) (citing *Arnold v. County of Cook*, 220 F. Supp. 2d 893, 896 (N.D. Ill. 2002)). In this case, there is no evidence before the Court demonstrating that the Plaintiff's lupus limited her ability to work more than forty hours per week. In other words, the Plaintiff has failed to present evidence that, when construed in her favor, shows a causal link between working overtime and experiencing lupus flareups that would allow a reasonable jury to conclude that she needed an accommodation.[12]

First, the FMLA Certifications do not show that the Plaintiff required an accommodation of a strict forty-hour workweek that prohibits any overtime work. The FMLA Certifications plainly set forth the job functions the Plaintiff cannot complete due to her condition; yet, they do not indicate that she is unable to work overtime or undertake stressful tasks. They also do not, as the Plaintiff contends, indicate that additional work will cause the Plaintiff to have a lupus flareup due to increased stress levels. While the Court recognizes that the FMLA Certifications include a recommended weekly schedule, the parties agree that the Plaintiff's normal schedule was consistent with the recommendation. *See* Ex. B (Decl. of Bonnie Obst) ¶ 10; Pl.'s Dep. 67.

---

[12] As defined in the ADA, the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). As such, the Seventh Circuit in *Youngman* is referring to the limitation of a major life activity. 947 F.3d at 1042 ("Put a different way, there must be 'some causal connection between the major life activity that is limited and the accommodation sought.'" (quoting *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 785 (7th Cir. 2007))). The Plaintiff does not explicitly identify which major life activity is limited by her lupus; however, based on her arguments it is clear that she is referring to the ability to work overtime. The Court notes that, generally, working overtime is not considered to be a major life activity. *See Beier v. Hoffmaster Co., Inc.*, No. 06-C-385, 2006 WL 3343780, at *4 (E.D. Wis. Nov. 17, 2006) ("Even if 'working' is a major life activity, certainly 'working overtime' is not."); *Kolpas v. G.D. Searle & Co.*, 959 F. Supp. 525, 529 (N.D. Ill. 1997) ("[The plaintiff] states that she needs to work a normal forty-hour week to avoid stress. Such an allegation is not sufficient to constitute a disability. The inability to work more than forty-hours per week by itself does not constitute a substantial limitation on the major life activity of working."). The Defendant does not argue that working overtime is not a major life activity; therefore, the Court, for the purposes of ruling on this motion, assumes that it does constitute a major life activity.

Moreover, the fact that the Plaintiff was granted leave under the FMLA does not automatically grant her the right to an accommodation under the ADA. *See Preddie*, 799 F.3d at 813, 817–18. Accordingly, these documents alone do not show that an accommodation was necessary.

The only other evidence the Plaintiff offers is her own testimony that an accommodation was necessary. Specifically, she testified that working overtime causes her increased stress, which results in her having more frequent lupus flareups. Pl.'s Dep. 197–99. This testimony, however, would be inadmissible during trial. The Plaintiff would be permitted to testify that she felt stressed while working overtime and describe the symptoms she felt while experiencing a lupus flareup. *See Starks-Harris v. Taylor*, No. 1:08-CV-176, 2009 WL 2970382, at *4 (N.D. Ind. Sept. 11, 2009) (explaining that a lay witness may "recount[] how she personally felt, physically and mentally; testimony that is rationally based on her own perception") (citing Fed. R. Evid. 701). However, the Plaintiff would not be permitted to testify that her increased stress from overtime work caused her to experience lupus flareups, as the Plaintiff does not have the necessary scientific, technical, or other specialized knowledge required to render a medical opinion regarding the causation of her lupus flareups. *Watts v. Schuh*, No. 1:12-CV-137, 2014 WL 1259946, at *2 (N.D. Ind. Mar. 26, 2014) (citing *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010)); *see also* Fed. R. Evid.701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."). Accordingly, there is no admissible evidence before the Court, from a medical expert or otherwise, that could be interpreted to show a causal link between the Plaintiff working overtime and experiencing lupus flareups.[13]

---

[13] During her deposition, the Plaintiff testified that her doctor told her that stress causes lupus flareups. Pl.'s Dep. 180. However, this testimony would not be admissible during trial. *See Youngman*, 947 F.3d at

The evidence before the Court demonstrates that the Plaintiff was unable to perform her job when experiencing a lupus flareup and that, at those times, she was able to take FMLA leave. However, the evidence before the Court, even when construed in the Plaintiff's favor, would not allow a reasonable jury to conclude that the Plaintiff's lupus rendered her unable to work more than forty hours per week or work overtime when she was not having a flareup. Accordingly, her failure to accommodate claim fails.

   iii.   *Request for an Accommodation*

Even if the Plaintiff did need an accommodation, the Defendant was under no obligation to provide an accommodation unless the Plaintiff requested one. The Defendant's summary judgment motion argues that the Plaintiff never requested an accommodation and, thus, it could not know that an accommodation was necessary. The Plaintiff argues that she requested an accommodation by submitting her FMLA Certifications and by directly asking her managers.

Although it is apparent that the Defendant was aware of the Plaintiff's condition, this alone is insufficient to require the provision of an accommodation. *Taylor-Novotny*, 772 F.3d at 494 (quoting *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 898 (7th Cir. 2000)); *see also Preddie*, 799 F.3d at 813. The Defendant's policies indicate that "[a]ny employee with a disability or history of disability who requires reasonable accommodation is responsible for notifying his/her location manager of this need and to engage in an interactive process with the Company to consider the particular circumstances." Ex. A-2 at 22, ECF No. 33-4.[14] The Plaintiff claims that she informed her managers that she needed an accommodation on

---

1043 ("But [the doctor's] out-of-court statement to [the plaintiff] amounts to hearsay which is beyond the limited exception set forth in Federal Rule of Evidence 803(4) for statements that patients make to their physicians for purposes of medical diagnosis or treatment.").

[14] The Defendant had a form it would provide to an employee's medical provider when an accommodation was requested. Ex. B (Decl. of Bonnie Obst) ¶ 7; Ex B-1, ECF No. 33-10. In this case, there is no such completed form for the Plaintiff.

several occasions, in person and by email and text messages. However, like with her discrimination claim, the Plaintiff has failed to provide any documentation memorializing these requests or any details about the conversations she had with her managers. *See, e.g.*, Pl.'s Dep. 40–42, 73–74, 76, 110, 113–14, 117–18, 119–21, 142–44, 149.[15] As previously explained, these bare assertions are insufficient to survive a motion for summary judgment. *See Brown*, 197 F. App'x at 482 ("A proper foundation for a conversation must include information as to when and where the conversation occurred, who was present, and who said what to whom." (citing *Houk*, 1987 WL 7498, at *2)); *Rivera*, 319 F. Supp. 3d at 1044 ("A witness's inability to recall a fact cannot be used to create a genuine dispute about it; no recollection yields no competent evidence." (citing *Brown*, 197 F. App'x at 481)).

The only remaining evidence the Plaintiff references in support of her assertion that she requested an accommodation is the FMLA Certifications. *See* Pl.'s Dep. 161. However, the FMLA Certifications do not constitute a request for an ADA accommodation. The FMLA Certifications request leave under the FMLA but make no reference to the ADA, a disability, or an accommodation. The FMLA Certifications also do not indicate that the Plaintiff cannot work overtime or that working overtime will cause her to experience lupus flareups. The Defendant's Benefits and Payroll employees, upon receiving the FMLA Certifications, did not interpret the FMLA Certifications to be a request for an ADA accommodation, *see* Def.'s Ex. A (Decl. of Carol Reichert) ¶¶ 13–16, ECF No. 33-2; Def.'s Ex. B (Decl. of Bonnie Obst) ¶¶ 10–12, and the Plaintiff does not demonstrate why they should have thought otherwise. The Plaintiff received letters from the Defendant's Benefits and Payroll department that approved her FMLA request

---

[15] The Plaintiff submitted Exhibit H, which is a text message conversation between the Plaintiff and one of the Defendant's managers. However, Exhibit H does not reference the Plaintiff's condition or an accommodation in any way.

but did not reference an ADA accommodation. Def.'s Ex. A-6 at 2–3, 9–10. Despite receiving these letters, the Plaintiff did not submit additional medical documentation or follow up with the Defendant's Benefits and Payroll employees. Pl.'s Dep. 27. Moreover, the Plaintiff submitted a nearly identical FMLA Certification to renew her FMLA leave, despite not receiving an accommodation after the initial Certification was submitted and approved.

Even when construing the evidence before the Court in the Plaintiff's favor, no reasonable jury could conclude that the Plaintiff requested an ADA accommodation. Accordingly, the Defendant's Motion for Summary Judgment must be granted as to the Plaintiff's failure to accommodate claim on this additional basis.

## CONCLUSION

For the reasons set forth above the Court DENIES Defendant Lincare Inc.'s Motion to Strike Certain Exhibits to Plaintiff's Response Brief [ECF No. 36] and GRANTS its Motion for Summary Judgment [ECF No. 32]. The Clerk of Court will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on August 3, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

32